United States v. Tena-Arana. Thank you. You may proceed. Good morning, Your Honors. May it please the Court, Jacob Rachebeau on behalf of the Appellant Jesus Tena-Arana. Mr. Tena-Arana asked the District Court for a below-guideline sentence based on his agreement to waive his right to appeal. The District Court, however, believed that she was legally barred from considering his appellate waiver as a basis for a non-guideline sentence. Well, hadn't he already, in his plea agreement, waived his right to an appeal before he ever got to the District Court with the plea? He was up for sentencing when this all occurred. That's right. Right. He agreed to an appellate waiver in his plea agreement which the District Court accepted prior to sentence. And was there a recommended sentencing range in the plea agreement also? There was. The government agreed to the equivalent of a one-level downward variance in exchange for his agreement to waive his right to appeal. And he didn't get that either. Right. Right. So he had a right to appeal. Exactly. Right. One of these... And he did appeal. Yeah. Right. Yes. That's why it's here. Thank you. Right. So one of the built-in exceptions in the plea agreement was that if he was sentenced above an offense level or the guidelines range associated with an offense level. Well, what I don't understand, I guess, about your position is if he had just gotten exactly what the plea agreement agreed to, he wouldn't have gotten anything specific for having waived the appeal other than what he agreed to in the plea agreement. Now, the court didn't buy the suggested sentence. And so why isn't the fact that he would have waived a plea agreement had he gotten what he thought he might have gotten by the boards? I'm not sure I totally understand the question, but... Well, by the boards means that what difference does it make at this point in the proceeding because he was given a sentence higher than he wanted and he was appealing that sentence. So he didn't lose anything by having given up his right to appeal. Well, what he lost was... I know what he wants, but what does it get? What he missed out on was the opportunity to receive that lower sentence that the government agreed to because the district court misunderstood that it wasn't allowed to consider his appellate waiver. Well, at the point the district court got to that point, there was no appellate waiver and there was no agreed upon sentence. So there was nothing to consider. The district court could have considered under section 3661, which says that there's no limitation to what a district court... Oh, I understand that. Could have, would have, might have is a little different. Sure. And the error here is that the district court misunderstood the law and believed that she was categorically barred from considering his agreement to waive his right to appeal at sentencing. So the problem is that she gave no consideration whatsoever to the fact that he agreed to waive his right to appeal when in fact an appellate waiver is relevant, is a relevant sentence in consideration. It's relevant under 3661, which says... Let's just assume that she didn't give him a higher sentence than he expected. Would he make the same argument today that being given the sentence in the plea agreement and her comment about not, that was not one of the circumstances she took into effect, would he still want a further reduction because of the appeal waiver? No, Your Honor. I believe that if he had received a sentence within the guideline range, so he asked for and the government agreed to the equivalent of a one level variance from, I believe, an offense level of 13 to an offense level of 12. The plea agreement or the waiver of appeal does not apply if the government had imposed a sentence within the guideline range associated with an offense level of 12. So if she had... Well, it does apply if he is sentenced within the guideline. Right. The waiver would apply. The exception to the waiver would not apply. So even if she had said that I cannot consider your appellate waiver, but I'm going to sentence you within the range that the parties requested anyway, then the appellate waiver still would have taken effect and we would not be here today. But, of course, that's a... And when you say that the government agreed to a variance, is that reality? Isn't really the fact that the government is only agreeing not to object to your request for a variance? Yeah. Because the district court is correct here in saying it is the district court's determination whether or not a variance will apply and will occur. That's true. And I do believe that in the government's response to our motion for a variance, I believe that's what the language is. It might be in the plea agreement. I'm not sure that the government did agree... You understand what I'm saying. I mean, there is a good difference here between what you said initially and the point I'm making now. That is, you cannot agree to a variance. True. And it's certainly not binding on the district court. Right. Right. The sort of check on that was just that the appellate waiver would not apply if he did not, in fact, receive the benefit of the equivalent of a one-level downward variance in the sentence. Now, as the government agrees, a defendant's willingness to waive their right to appeal is a permissible consideration at sentencing. And that's under Section 3661 and it is also relevant to the factors that the court, district court, must consider under Section 3553A. Specifically, it is relevant to the history and characteristics of the defendant. A defendant's waiver of the right to appeal suggests an even greater acceptance of responsibility than simply just pleading guilty. We have cases that talk about the court is entitled to consider anything and everything. Do we have a case that fits your case, that is, that the court should and can consider appellate waiver? I don't believe that there's a case directly on point in the Tenth Circuit, but the Tenth Circuit has recognized that appellate waivers serve the public interest in saving the government resources and in promoting finality, and that they do represent an extraordinary acceptance of responsibility above and beyond simply pleading guilty, admitting to the elements of offense. Moreover, the Tenth Circuit's case law and the Supreme Court has essentially said that 3661 means that the sentencing court can consider virtually anything limited only by the constraints of the Constitution. So, for example, a district court couldn't notwithstanding 3661, a district court couldn't consider a defendant's race at sentencing. What does it mean to consider? Are you saying that there must be an affirmative reduction if there was an appellate waiver? No. Okay, so the court in this case agreed to consider the request for a variance, but she wasn't going to vary because of the appellate waiver. Right. Now, what is it that you want the court to do? And we have an abuse of discretion situation here, I think, where she said, I'll consider your variance, but I'm not going to give you a break because you signed an appellate waiver, which isn't applicable now because here you are appealing. Right, and there's a difference between a district court believing that it legally cannot consider a certain factor at sentencing and understanding that it can consider a fact at sentencing and giving it little to no weight. The former is what happened here. The district court outright rejected that an appellate waiver has any that is a permissible consideration at sentencing categorically. Well, she said it wasn't relevant to any of the sentencing objectives. Right. She said that, well, what she said was that none of the 3553A factors concern appeals, which I interpret as her saying that I'm only allowed to consider the factors that are expressly laid out in section 3553A, and none of those 3553A factors say anything about what I can give consideration to at sentencing. This was her error. Not only is an appellate waiver relevant to the characteristics of the defendant, which is a 3553A factor, again, 3661 says that there's absolutely no limitation to what the district court could consider. What is our scope of review? I'm sorry? Scope of review. What is our scope of review on the question you're raising? What is the scope of review? Are we at plain error here? Did you preserve this objection? Yes. All you said, or all whomever was at the hearing said, they objected to the variance. Correct, Your Honor. Period. Is that enough to preserve the issue that you're raising here? Because this sounds like a procedural error in sentencing, specifically as regards the lack, in your view, of consideration of the request for variance and also the appellate waiver. All of that was not said to the district court, right? Well, it's a procedural error in the same sense that, for example, a request for a minor participant role would be still a procedural reasonable issue as opposed to a substantive one. But the only... And you agree that this is a procedural error that you're asserting on appeal? Correct. But it is nonetheless preserved by asking for the variance based on this specific factor and the district court then outright rejecting that factor as a permissible consideration. But the objection after the court rules was only, we object to the variance. That is, she varied upward. That's true, Your Honor. And I did file, very recently, a 28-J letter that I'm not sure reached the court in which I do say that we are not relying on the objection after the fact for preserving this issue because I do understand that that really was an objection to the upward variance that the court imposed to Esponte as opposed to a downward variance that we asked for initially. However, all that is required to preserve a claim of error as Rule 51b says is to notify the court of the action that it seeks the court to take. And here... Well, if that is true, all one would have to do to preserve an error is to file a motion. And if the court denies the motion, you could come up on appeal and say, we've preserved an error because the court did not grant our motion. That isn't a way it works, is it? No, Your Honor. And that's not what happened here. What happened here was Mr. Tanerana filed a motion for a downward variance sentence based specifically on the appellate waiver. The district court rejected that motion and categorically refused to consider the appellate waiver as a permissible sentencing factor. If we are at plain error, have you established plain error? Yes, Your Honor. I think the government concedes that an appellate waiver is a permissible sentencing consideration. It is clear from the language of the district court's order that she, as she understood the 3553 Act, she understood the 3553 Act as categorically prohibiting... If we walk through plain error, it's error, it's plain error, doesn't matter. Substantial effect on his rights. It does, Your Honor. All we have to show for that is that there's a reasonable probability that it would have affected the outcome of the sentence. Here, both parties... The district court was pretty vehement about the rationale for the upward variance in this case. I would agree with that. And she did make it clear that she wanted to impose a sentence more than 24 months because that is what he had received last time and it was not a sufficient deterrent effect. What she actually imposed was 30 months. So there really is a six-month window wherein she could have imposed a sentence less than what she actually did had she understood that the appellate waiver is a consideration at sentencing and still be greater than the last sentence she imposed. Looking at this record, do you think it's believable that she would have ever sentenced him to 24 months? To 24 months? I think the most realistic scenario is that she would have imposed 27 months. I think that would have given effect to what the parties were... suggested was appropriate for the appellate waiver, that one-level reduction, which would have put them at an upper guideline range of 21 months. And if you still assume that she would give a six-month upward variance, that would result in 27, which is within that 24 to 30-month window. And I see that I'm out of time. Can I ask one question? Sure, go ahead. I just have one question. And this is related to Judge Briscoe's question about the scope of review. It seems to me that one can look at what Judge Krieger said, and it could be ambiguous. There's a mismatch between... a variance is a mismatch between a guideline calculation and a statutory calculation, which underlies, I think, at least partly, the disagreement between you and opposing counsel. So what do we do with that? If there's an ambiguity, either through an abusive discretion standard or plain error, whatever the standard is, it seems just counterintuitive that we could or should reverse, assuming that Judge Krieger misunderstood the import of 3661 based on an ambiguous language. I mean, in the real 2020 hindsight, with a microscope, one can later evaluate. So should we affirm, if we determine that Judge Krieger's language is reasonably susceptible of either interpretation, that she was deciding not to vary downward, as hypothesized, or that, as you hypothesized, that she misunderstood her ability to vary downward? So under the plain error standard, I'd have to concede that if the court determined that it was ambiguous, then I failed to demonstrate plain error, and this court can affirm. But I think under the abusive discretion standard, if it's ambiguous, I think this court still needs to decide what her words meant. And here, I submit that it's not ambiguous. It's just that an appellate waiver is simply not something that figures into a variance. And I think that shows that she did not understand that it could be relevant to the 3553A factors, and a misunderstanding that 3553A puts a ceiling on what she can consider. Thank you. Thank you. Good morning. May I please the court? I'm Marissa Miller for the United States. There are three issues of this case that I'd like to touch on during my argument today. The first is why the defendant didn't preserve the claim, and why the plain error rule therefore applies. The second is why the district court didn't actually commit the error that the defendant alleges. And the third is why, even if the district court did commit that error, the defendant wasn't prejudiced. Turning to the first issue, the defendant argues that he preserved this claim simply by filing a motion for a downward variance, and then objecting when the court ultimately varied upward. But on appeal, the defendant's complaint isn't with the district court's actual decision. It's with the court's decision-making process. And that's something he never objected to during the proceeding itself. The defendant acknowledged both during oral argument and in his brief that this is a procedural claim. And as this court has held in United States v. Weyermann and United States v. Romero, which is the 2007 precedent that Weyermann relies on, simply asking for a shorter sentence or a downward variance and then objecting when you don't get it simply isn't enough to preserve a claim about a procedural flaw. Are you familiar with the Lopez-Avila case? I am not, Your Honor. Yes, actually, I am. I apologize. Yes, Romero discusses, yes. Well, in Lopez-Avila, Judge Holloway, speaking for a unanimous panel, distinguished Romero, as I recall, and said, in that case, the motion for a downward variance based on the District of Colorado's lack of a fast-track program is a ground for a variance, did not object once the judge ruled. And the panel, in the published opinion, said Romero does not apply in that situation because the motion for a downward variance coupled with the district judge's statement that the judge is not going to vary downward would simply call upon the district judge to repeat what he had already indicated in the motion for a downward variance. And I have trouble figuring out how one can distinguish defense counsel's argument for preservation with the defendant's argument for preservation in Lopez-Avila. Well, I mean, I think that there, you have to think about the questions that were presented to the court. What was presented to the court through the motion was, does this appellate waiver justify a downward variance? But the question we're dealing with now is, is that a proper consideration at all? So I agree that that second question is maybe lurking very far below, you know, the question in the motion itself, but not something that's brought to the district court's attention. And that's really... Well, let me interrogate you about that a little bit, or ask you about that. In both situations, the defendant, whatever the ground is, the lack of a fast-track program in the basis for the district judge varying downward. So maybe the ground is different, but what transpired is exactly the same. The defendant in both cases said, I, the defendant, should get a downward variance based on this. In both situations, the district judge says, under the defendant's argument on the merits, I can't vary downward based on that. And in My response to that would be, I don't believe we have a situation where the district court unambiguously said, I can't vary based on this factor. And that's one of the reasons that the plan error rule is so important here. It's because it incentivizes defendants to bring their objection to the court's attention so that we can possibly avoid the need for an appeal like this. So here, where we don't have a situation where the district court is saying, I can't vary based on that, but possibly saying, I won't vary based on that, I believe that was the court's actual language, or I'm choosing not to vary based on that. Or another interpretation that Judge Briscoe sort of alluded to was, actually, the court's just saying, I'm drawing a distinction between a departure, which the parties can agree to, and a variance, which is entirely up to me. And the plan error rule acts to encourage the defendant to raise his hand and say, Your Honor, I'm concerned that you're committing a legal error here. And if that had happened, the court would have been given the opportunity to clarify what exactly they were doing or to hear argument from defense counsel and possibly avoid an error. And whether or not that case is distinguishable, I do think that the rule in Romero, as articulated by Judge Ebell, is correct for this particular situation. But I would also like to address the defendant's argument that the language is really unambiguous, that the district court committed this error. If you look at the record, you don't see any of the words or phrases that you would really expect if the court had truly believed it was categorically prohibited from looking to the appellate waiver. The court never says, this is an impermissible factor. The court doesn't say, I'm barred or prohibited. I thought, well, defining and describing what the court did as a categorical bar is putting a little icing on the cake. I agree. But the court did say that an appellate waiver is not within the factors that it would consider. So isn't that the same thing? I'm not going to consider that. No, Your Honor. My interpretation of that is that the district court is saying, the district court understands that it can look to the factors that are laid out in 3661. It's not limited to 3553A. But here the court is saying, I'm choosing to confine myself to those factors. And I am coming to the decision that I don't think an appellate waiver falls within those factors. I think that's a legally correct conclusion. So you're saying that she's saying that I could consider it, but it doesn't affect my decision here. I do not find it as a positive factor. Yes. Yes. There's either, I can consider it and I'm choosing not to, or I can consider it, I'm considering it, and I'm assigning it a zero value. End of discussion. I do think it's also helpful to compare this case to Smith, which is what the defendant relies on very heavily. That's the guiding precedent here. But in Smith, we had a district court very explicitly saying that it was prohibited from looking at the factor there, which was the defendant's other 924C sentence. And the district court explained why it felt that way. And we simply don't have that kind of record here. At worst, the record is ambiguous. There are several ways to read it. But the defendant's interpretation, which is that the court really thought it had no power whatsoever to consider this factor, seems to be the least likely of those interpretations. And generally this court doesn't strain to interpret the record in a way that requires reversal of a district court, especially where, as here, we're on plan error review. Let me ask you, you know, typically if we are uncertain, in many instances, of whether the district court adequately explained something, if we are confused by the language, oftentimes we will remand for further findings or for an explanation. And here, if it is ambiguous of whether the district judge misunderstood her ability to vary downward or was just simply opting not to vary downward, should we simply remand for clarification by the judge? I think the distinction between those two situations is that the adequate explanation is something that's for the benefit of the defendant. Whereas here, you know, the court's just kind of stating the law. Ultimately, I think if this went down on remand, it would be a situation where the court would say, nope, I did not misunderstand the law. You know, that's pure speculation on my part. And that's not something that the defendant really needs in the way that he needs an adequate explanation of, I guess, the reasons the court is coming to that decision. And your point is there's no point in remanding because the result would be the same? I mean, yes. That is obviously a strong point in our favor and I think one that requires the defendant's complaint to fail, even if the district court did commit this error. And you know, as Your Honors have touched upon, the record is very clear that the district court was determined to impose the sentence that it ultimately did. The defendant had received a two-year sentence. And I'm quoting the district court here, highlighting the fact that a 24-month sentence previously imposed did nothing to deter your reentry into the United States. The court talks about how it needed to impose a sentence higher than before to promote respect for the law, to deter the defendant from coming back, and to protect the public because every time the defendant came back, he committed a crime. So that's where that two-and-a-half-year, 30-month sentence come from. It's something that's meaningfully more than 24 months. Under plain error, the defendant is required to demonstrate a reasonable probability that he would receive a shorter sentence. And the only argument I've heard to that effect is that, you know, the district court might have granted the motion and started from a lower point. But that burden is on the defendant and there is nothing in the record that supports it. And as just discussed, everything in the record actually indicates the contrary, that the district court was very set on this particular sentence. If the panel has no further questions, I will concede the remainder of my time. Thank you. Thank you. Thank you, counsel. Thank you both for your arguments this morning. Case is submitted. Court is in recess until 8.30 tomorrow morning.